# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 06-60074-08** |
| | | **CIVIL NO. 6:11-1665** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| | | |
| **SABINA LUNA VALDEZ** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Sabina Luna Valdez ("Valdez").  [rec. doc. 903].  The Government has filed an Answer, a Memorandum in Support, and an Amended Memorandum in Support of its Answer [rec. docs. 993 and 994-1], to which  petitioner filed a Reply and an Amended Reply.  [rec. docs. 999 and 1024].  For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.  Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

On  November 16, 2006, Valdez was named with twelve others in a multi-count indictment ("original indictment") charging her with conspiracy to possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base or

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

"crack" and one thousand kilograms or more of marijuana in violation of 21 U.S.C. § 846 (Count 1).  The government also sought forfeiture of certain items pursuant to 21 U.S.C. § 853 (Count 16).  [rec. doc. 1].

The indictment alleges that Valdez knowingly participated in a large-scale drug conspiracy, in which her sons, Victor Luna Valdez and Antonio Luna Valdez, Jr., and her daughter, Maria Aide Delgado, were  key members, by knowingly procuring, smuggling and transporting cocaine and marijuana from Mexico into the United States through the Rio Grande Valley.

Valdez is named in various overt acts. Overt act (d) alleges that on April 27, 2004, Valdez, Victor Luna Valdez and Antonio Luna Valdez, Jr. visited the residence of co-defendants Eric Alexander ("Alexander") and Francisca Wiltz Alexander, after which Alexander deposited $5,000.00 into a credit union account (overt act (e)).

Overt act (f) alleges that on May 21, 2004, Valdez, Victor Luna Valdez and Antonio Luna Valdez, Jr.  again visited the residence of Alexander and Francisca Wiltz Alexander, and within days thereafter, Alexander entered a storage center, which was later found to contain marijuana (overt acts (g) and (h)).

Overt act (j) alleges that on November 26, 2004, Valdez was a passenger in a vehicle with Victor Luna Valdez and Antonio Luna Valdez, Jr., which was entering the United States from Mexico, wherein Valdez was found to have been carrying six kilograms of cocaine and three grams of cocaine base on her person.

On November 14, 2007, Valdez was named in a superceding indictment, charging several co-defendants with a second conspiracy to commit money laundering and various substantive counts relating to that conspiracy and, additionally, renumbering the forfeiture count. [rec. doc. 235].

The overt acts naming Valdez in the superceding indictment are the same as in the original indictment, except that Francisca Wiltz Alexander is not mentioned in overt acts (d) and (f), presumably because she had already entered a guilty plea prior to the return of the superceding indictment. [*See* rec. doc. 232].

On February 15, 2007, the Court certified the case as complex. [rec. doc. 126]. The case was set for jury trial beginning on June 9, 2008. [rec. doc. 267].  However, on Motion of co-defendant Antonio Luna Valdez, Jr., on May 20, 2008, the trial was continued until January, 2009. [rec. docs. 335, 369 and 373].  Prior to trial, however, Valdez and all other co-defendants, except Michael Scott Wyatt, Antonio Luna Valdez, Jr.  and Yvette Francis Eaglin entered guilty pleas.  More specifically, on December 18, 2008, Valdez pled guilty to Count 1 of the superceding indictment, to wit, conspiracy to possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base or "crack" and one thousand kilograms or more of marijuana in violation of 21 U.S.C. § 846.  [rec. docs. 466 and 467].

Valdez was represented through her plea proceeding by J. Rodney Baum. However, prior to her plea hearing, on December 16, 2008, Todd S. Clemons filed a Motion to Enroll as retained counsel of record for Valdez. [rec. doc. 455].  At the plea

3

hearing, Judge Doherty confirmed that Valdez' family made arrangements with Mr. Clemons to undertake her representation, but that Valdez wanted Mr. Baum to continue his representation of her. [rec. doc. 641, pg. 3]. After entry of her guilty plea, on January 22, 2009, the Court granted Mr. Clemons' Motion to Enroll and, accordingly, Mr. Clemons undertook Ms. Valdez' representation at that time. Thus, Mr. Clemons represented Valdez in connection with her sentencing. [rec. doc. 512].

In connection with the plea, petitioner executed a Plea Agreement in which she acknowledged, in writing, the facts set forth in the Factual Basis to Support Guilty Plea and that she was pleading guilty to Count 1 of the superceding indictment because she was, in fact, guilty. She also acknowledged her understanding of the maximum penalty which could be imposed for conspiracy to possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base or "crack" and one thousand kilograms or more of marijuana, namely, a mandatory minimum term of imprisonment of ten years up to a maximum of life imprisonment, a fine of up to $4,000,000.00, and a mandatory term of supervised release of five years.

Petitioner also acknowledged that her plea was free and voluntary and that no threats had been made against her. Further, she acknowledged that she understood that the Sentencing Guidelines were not mandatory, that the Court could depart from the Guidelines under some circumstances, and that no promises or representations had been made as to the sentence the Court would impose. She further acknowledged that she was

4

satisfied with the assistance she had received from counsel, Mr. Baum, whom she believed to have acted competently.  [rec. doc. 467-4].

      In connection with the plea, petitioner also executed an Affidavit of Understanding of Maximum Penalty and Constitutional Rights in which she again acknowledged, in writing, that she understood the charge to which she was to plead guilty, that she had been furnished a copy of that charge, and that she had been personally addressed by the Court and informed as to the maximum penalty which could be imposed for that charge. Petitioner further acknowledged her understanding of her constitutional rights and acknowledged that she was aware that by pleading guilty he would waive those rights. Finally, she again acknowledged, in writing, that her guilty plea was free and voluntary and made without any threats or inducements whatsoever. [rec. doc. 467-1, pg. 1-2].

      Finally, petitioner signed a Stipulated Factual Basis for her plea which summarizes Valdez' involvement in overt acts (d), (f) and (j) of the superceding indictment in greater detail than that alleged in the indictment.  In so doing, she acknowledged that she had carefully reviewed the document with her counsel that she fully understood it and voluntarily agreed to the Stipulated Factual Basis for her plea. [rec. doc. 467-2].

      The factual stipulation provides that the April 27, 2004 visit by Valdez, Victor Luna Valdez and Antonio Luna Valdez, Jr. to the residence of Alexander and Francisca Wiltz Alexander, set forth in overt act (d),  was observed by agents, while conducting surveillance, and nothing was recovered from a later traffic stop of the vehicle, in which Valdez was a passenger.

5

With respect to the May 21, 2004 visit by Valdez, Victor Luna Valdez and Antonio Luna Valdez, Jr. to the residence of Alexander and Francisca Wiltz Alexander, set forth in overt act (f), the factual stipulation states that, although during a traffic stop thereafter a narcotics dog alerted to the front dash board of the vehicle in which Valdez was a passenger, the only item recovered was a roll of saran wrap, which is frequently used to wrap bundles of controlled substances.

The factual stipulation further provides that on November 26, 2004, the drug arrest set forth in overt act (j), occurred when a vehicle driven by Victor Luna Valdez, in which Valdez and  Antonio Luna Valdez, Jr. were passengers, was stopped at the Progresso, Texas point of entry into the United States from Mexico. A narcotics dog tried to alert on the occupants, and Valdez was found to have 5.907 kilograms of cocaine and 3.0 grams of cocaine base concealed in a spandex under garment below her "mumu" style dress. Valdez pled guilty to this drug offense in the United States District Court for the Southern District of Texas, for which she was sentenced on June 28, 2005 to forty-six months imprisonment. [rec. doc. 467-2].

The factual basis also contains an admission by Valdez that "she conspired with her family members and others in south Texas to transport and deliver to Eric Joseph Alexander and his associates in the Acadiana Region of Louisiana, and to other locations in the United States, marijuana and cocaine."  Valdez also admitted "that the quantities of cocaine delivered during the conspiracy were in excess of Five (5) kilograms." Valdez

6

further admitted that "she and her family members transported drug proceeds from various locations in the United States back to the drug sources in south Texas." [rec. doc. 467-2].

The Court confirmed with petitioner that she understood each of these documents and signed them after the documents had been explained to her by Mr. Baum, Valdez affirmatively stating, while under oath, that "yes, he explained it to me." [rec. doc. 641, pg. 24-25].

During the plea proceeding, Valdez was assisted by an interpreter.  Mr. Baum explained that Valdez understands English and that, during all of their past meetings, she had been able to communicate, and that he felt "very comfortable with [their] communication and her level of understanding." They frequently also had Valdez' daughter present at these meetings to help explain any clarifications to Valdez.  However, because of the use of legal terms, he thought it advisable to have an interpreter present. Accordingly, during the plea proceeding, Judge Doherty verified that Valdez understood English when spoken slowly. [rec. doc. 641, pg. 7-9].

Prior to acceptance of petitioner's plea, the Court likewise verified petitioner's competency to enter a guilty plea. [*Id.* at 4-5].  Petitioner also acknowledged that she understood the proceeding and was, accordingly, able to recite the charge against her and her purpose for appearing before the Court. [*Id.* at pg. 5].   In response to the Court's inquiry, petitioner's counsel, Mr. Baum, also acknowledged his satisfaction with

petitioner's understanding of the proceedings and her competence to enter a guilty plea, noting that he had met with Valdez "numerous times and discussed the charges against her, the evidence and facts involved with the case, and also [had] discussed on more than one occasion this particular plea agreement that [they] reached with the United States." [*Id*.].

The Court also verified that petitioner had enough time to talk with her counsel, Mr. Baum, about her case and that she was satisfied with the representation that Mr. Baum had provided.  [*Id*. at pg. 6].

Judge Doherty advised petitioner that should she accept her guilty plea, petitioner would waive her Constitutional right to trial by jury, the government's burden of proof at trial, her right to testify at trial, her right to call witnesses on her own behalf and to confront and cross-examine the government's witnesses, as well as her right against self-incrimination.  Petitioner indicated that she was willing to waive these rights. [*Id*. at  pg. 10-12].

Judge Doherty verified that Valdez had been furnished a copy of the charge against her and that she, Mr. Baum and her daughter went over the document the day before the hearing. [*Id.* at 6-7].  The Court nevertheless also explained  the nature of the charge against petitioner, expressly advising petitioner of each element that the government would have to prove beyond a reasonable doubt for petitioner to be found guilty. Petitioner acknowledged her understanding of the charge. [*Id*. at pg. 12-15].

8

Petitioner was expressly advised by the Court of the maximum penalty for the crime to which she was to plead guilty, expressly advising petitioner that she faced "an imprisonment term of confinement up to a maximum of life in prison"; petitioner acknowledged her understanding of the maximum possible penalty.  [*Id*. at pg. 20-21].

Judge Doherty confirmed that petitioner and her attorney had discussed how the Guidelines might apply in petitioner's case and had discussed the concept of relevant conduct.  The Court advised that a Pre-Sentence Investigation Report ("PSI") would be prepared, and that while the Guidelines would play a role in the Court's determination of petitioner's sentence, the Court was not bound to follow the Guidelines. [*Id*. at pg. 20-22]. Judge Doherty further advised that she would not be able to determine what Guideline sentence range might apply to petitioner until after the PSI had been completed, but that the sentence which would be imposed could be more or less than called for by the Guidelines.  Moreover, Judge Doherty verified that if the sentence was more than Valdez believed she would receive, Valdez could not withdraw her plea.  Valdez acknowledged her understanding. [*Id*. at pg. 26-28].

Judge Doherty also confirmed that petitioner's plea was freely and voluntarily entered, specifically verifying that no one had made any promise, other than those contained in the Plea Agreement, that induced Valdez to plead guilty, and expressly confirmed that Valdez' attorney made no promises to her, to which Valdez replied "No, no, no, he just explained."  [*Id*. at pg. 25].  Further, Valdez admitted that she had not been threatened by anyone or forced or intimidated to plead guilty. [*Id*. at pg. 22].

9

The Court also read petitioner the Stipulated Factual Basis for her plea, advising Valdez to "listen very carefully and if any part of it is not correct, now is the time to tell me. . . "; Valdez agreed.  [*Id*. at 15-19].   Prior to reading the last paragraph of the Stipulated Factual Basis containing admissions that Valdez conspired with her family members and others to transport marijuana and cocaine from south Texas to the Acadiana Region of Louisiana and the amounts of cocaine delivered, Judge Doherty again expressly advised Valdez "this is probably the most important set of facts, so listen up." [*Id*. at 19]. Finally the Court confirmed that Valdez had signed the Factual Stipulation and asked;

> THE COURT:  And you agree with these facts?
>
> VALDEZ:  Yes.
>
> THE COURT: To the best of your knowledge, they are accurate and
>
> correct?
>
> VALDEZ: Yes.

[*Id*.].

At the conclusion of the plea proceeding, before Judge Doherty accepted petitioner's plea, Judge Doherty again confirmed that Valdez agreed with those facts, to which Valdez again replied,  "Yes, yes." [*Id*. at 29].

The Court then noted that because Valdez had acknowledged that she was, in fact, guilty as charged in Count One of the superceding indictment, supported by an independent basis in fact containing each of the essential elements of the offense, and since Valdez knew of her right to trial, the maximum punishment, and was fully

competent and capable of entering an informed plea that was knowing and voluntary, Valdez' guilty plea was accepted by the Court. [*Id*. at pg. 30-31].  A PSI was ordered. [*Id*. at 31].

Thereafter, the Court received a letter from Valdez requesting that her retained defense counsel, Todd S. Clemons, be removed as her attorney and that her daughter, Maria Aide Delgado, be appointed to handle her legal affairs. [rec. doc. 556]. A hearing was set for May 14, 2009. [rec. doc. 558].  However, prior to the hearing, the Court received correspondence from Valdez, dated May 1, 2009, in which she stated that she was satisfied with the representation provided to her by her retained counsel, Todd S. Clemons, and that she desired to have Mr. Clemons continue his representation of her. Accordingly, the hearing was canceled. [rec. doc. 566].

On May 28, 2009, Valdez appeared for sentencing with her retained counsel, Mr. Clemons.  Prior to beginning the sentencing hearing, Judge Doherty confirmed, because she wanted to be "absolutely certain", that Valdez wished to go forward with Mr. Clemons as her attorney.  Valdez expressly stated that she and Mr. Clemons had talked and that she did want Mr. Clemons to continue to represent her. [rec. doc. 642 at pg. 4-5].

Mr. Clemons objected to the PSI, arguing that Valdez should be entitled to the "safety valve" provision of Guideline § 5C1.2, resulting in a two level reduction of her total offense level, thus lowering Valdez' Guidelines sentencing range, and permitting her

11

to be sentenced below the statutory mandatory minimum 120 month sentence.[2]  The government opposed the objection, arguing that Valdez had not provided the government with all of the information she possessed pertaining to the conspiracy and, accordingly, was not entitled to the benefit of the safety valve provision. [*Id.* at 6-7].

After hearing the testimony of Agent Catalan, the Court found that there was insufficient evidence to find that Valdez had not "fully debriefed", that is, provided the government with all of the evidence she possessed regarding the conspiracy. [*Id*. at 19-22].   Accordingly, the Court sustained the defense objection to the PSI and found that

---

[2]The "safety valve" provision permits a court to issue a sentence below a mandatory minimum if the defendant meets five criteria:  (1) that she does not have more than one criminal history point; (2) that she did not use violence or threats of violence or possess a weapon during the offense; (3) that her offense did not result in death or serious bodily injury to any person; (4) that she was not an organizer or other major participant in the offense; and (5) that not later than the time of the sentencing hearing, she has truthfully provided to the Government all information and evidence she has concerning the offense. U.S.S.G.  § 5C1.2.

U.S.S.G. § 5C1.2 states:

In the case of an offense under 21 U.S.C. §§ 841[and] ... §§ 846, ... the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. §§ 3553(f)(1)- (5) set forth verbatim below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §§ 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same  course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Valdez was entitled to the benefit of the "safety valve" provision. [*Id*. at 22-23].  Thus, Valdez' total offense level was lowered from 28 to 26 and, considering her criminal history category of 1, Valdez' Guidelines sentencing range was recalculated from 78 to 97 months, to 63 to 78 months imprisonment. [*Id*. at 23].

Defense counsel, Mr. Clemons, also submitted a Sentencing Memorandum in which he argued that, in the event that the safety valve provision was found applicable, the Court should further downward depart and sentence Valdez to 54 months incarceration, with credit for time served on her Southern District of Texas conviction and pre-trial incarceration pursuant to § 5k2.23, and that this downward departure was justified on the basis of Valdez' age (61), background (no formal education, no trade or skills, supported herself and her family as a migrant worker, limited ability to speak English and minor role in the offense) and medical conditions (morbid obesity, coronary artery disease, hypertension, diabetes, arthritis, osteoporosis, stomach ulcers and prior heart attack with stint placement). [*Id*. at 26; rec. doc. 903-2, pg. 13-14].

After considering the Guideline range and the sentencing factors set forth in 18 U.S.C. § 3553(a), Valdez was sentenced to seventy-eight months imprisonment, the highest sentence applicable under the Guidelines range, with credit for the one year period Valdez was incarcerated with respect to this charge, followed by four years of supervised release, to run concurrent with her supervised release sentence imposed in the Southern District of Texas on the substantive offense alleged in overt act (j) of the

superceding indictment.

In so doing, the Court noted that it would have gone above the Guidelines range, given that Valdez was the matriarch of her family which was involved in the drug conspiracy and that Valdez was substantially involved in the offense.  However, the Court "backed out" the time (40 months and 12 days) that Valdez had spent in Texas custody on the substantive offense set forth in overt act (j) of the superceding indictment from the sentence above the Guidelines range that the Court would otherwise have imposed.  [*Id.* at 34-36, 41; rec. docs. 583 and 584].

A notice of appeal was filed.  Appellate counsel filed an *Anders* brief, to which Valdez filed a response (apparently prepared by her daughter, Maria Aide Delgado) asserting ineffective assistance of counsel.  The Fifth Circuit determined that Valdez' claims could not be resolved on direct appeal when they had not been raised before this Court since no opportunity existed to develop the record.  Accordingly, noting that its independent review disclosed no non-frivolous issue for appeal, the Court granted counsel's motion to withdraw and denied Valdez' motion for appointment of substitute counsel. Petitioner's appeal of her conviction and sentence was dismissed as frivolous by the Fifth Circuit on June 22, 2010; the Judgment issued as mandate on July 14, 2010. [rec. doc. 791].

In the instant motion to vacate, filed on September 14, 2011, Valdez asserts the following claims for relief: (1)  that she received ineffective assistance of appellate counsel because counsel failed to review the entire record prior to filing her direct appeal;

(2) that she received ineffective assistance of trial counsel because her attorney, J. Rodney Baum, (a) failed to file Motions to Suppress evidence seized during the June 9, 2005 stop of three other co-conspirators, set forth in the superceding indictment as Count 6 (at which Valdez admits she was not present), and the "initial stops of April and May", set forth as overt acts (d) and (f) in the superceding indictment; (b) failed to file a Motion to Dismiss for a speedy trial violation; (c) inadequately investigated the case to discover exculpatory evidence withheld by the government; (d) failed to adequately advocate on petitioner's behalf by failing to be present during post-plea debriefing and failing to appear for Valdez' initial appearance on the superseding indictment; and (e) induced petitioner to enter a guilty plea based on an unfulfilled promise; and (3) that she is actually innocent of the conspiracy to which she entered a guilty plea because there was insufficient evidence to support her conviction.

## LAW AND ANALYSIS

### Claims Properly Considered in this § 2255 Motion/Scope of Review

A federal prisoner may collaterally attack her conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides four grounds for relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow.  The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal."  *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982).  Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).  However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[3]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 *citing*

---

[3]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986).  As set forth below, there has been no constitutional violation in petitioner's case and petitioner has not demonstrated that she is actually innocent.  Accordingly, this exception is inapplicable here.

*United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

In a case involving a guilty plea, this requires a showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted" the petitioner. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Torres*, 163 F.3d 909, 912 at fn 15 (5th Cir. 1999).

Further, when "a judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

Under the applicable law, it appears that, with the exception of one of petitioner's ineffective assistance of counsel claims and her ineffective assistance of appellate counsel claim, petitioner's claims cannot properly be considered in this § 2255 Motion, because (1) petitioner entered a counseled, voluntary plea, (2) the claims were not presented on direct appeal and (3) petitioner has failed to demonstrate (a) either cause or prejudice for her default or (b) actual innocence.  Nevertheless, all of petitioner's claims will be addressed.

No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record. *United States v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).  The issues presented in the instant case are

17

either contrary to law or plainly refuted by the record.  Accordingly, no evidentiary

hearing is necessary.  The issues will be resolved by considering the briefs filed by the

parties and the court record.

## I.  Ineffective Assistance of Counsel

Petitioner contends that she was denied the effective assistance of counsel because

her attorney, J. Rodney Baum, (a) failed to file Motions to Suppress evidence seized

during the June 9, 2005 stop of three other co-conspirators, set forth as Count 6 in the

superceding indictment (at which Valdez admits she was not present), and the "initial

stops of April and May", set forth as overt acts (d) and (f) in the superceding indictment,

(b) failed to file a Motion to Dismiss for a speedy trial violation, (c) inadequately

investigated the case to discover exculpatory evidence withheld by the government, (d)

failed to adequately advocate on petitioner's behalf by failing to be present during post-

plea debriefing and failing to appear for Valdez' initial appearance on the superseding

indictment, and (e) induced petitioner to enter a guilty plea on the basis of an unfulfilled

promise.  For the following reasons, these claims are without merit and, accordingly, do

not warrant *habeas* relief.

Courts can consider claims of ineffective assistance of counsel that are brought for

the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.

1996). However, petitioner's guilty plea constitutes a waiver of all non-jurisdictional

defects in the prior proceedings.  *United States v. Glinsey,* 209 F.3d 386,392 (5th Cir.

18

2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392.

With the exception of petitioner's claim that her counsel was ineffective by inducing her to enter a guilty plea, the remainder of Valdez' ineffective assistance of counsel claims (that is, that counsel was ineffective for failing to file Motions to Suppress, failing to file a Motion to Dismiss, inadequately investigating her case and failing to adequately advocate on petitioner's behalf) are procedurally barred by the entry of petitioner's guilty plea because they are not alleged to have rendered petitioner's guilty plea involuntary. *See Glinsey; Bendicks*, *Broce, supra.* Nevertheless, they will be briefly considered.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).

   *Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[4] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.   With respect to guilty pleas, the prejudice

---

[4]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
   An error by counsel, even if professionally unreasonable, does not
   warrant setting aside the judgment of the criminal proceeding if the error
   had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S.
   361, 364-65 (1981).

   Defendant must show that there is a reasonable probability that, but for
   counsel's unprofessional errors, the result of the proceeding would have
   been different.  A reasonable probability exists if the probability is
   sufficient to undermine confidence in the outcome.

   When a defendant challenges a conviction , the question is whether there
   is reasonable probability that absent the errors the fact-finder would
   have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Glinsey,* 209 F.3d at 392 *quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Thus, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1043.

21

Initially the undersigned notes that petitioner's present claims are expressly refuted by petitioner's acknowledgments, in writing, and her sworn testimony during her plea proceeding.  In her Plea Agreement, Valdez acknowledged that she was satisfied with the assistance she had received from counsel, J. Rodney Baum, whom she believed to have acted competently.  [rec. doc. 467-4].  Petitioner also acknowledged, in open court,  while under oath, that she had ample opportunity to discuss her case with Mr. Baum, and that she was satisfied with the representation that Mr. Baum had provided.  [*Id*. at pg. 6]. Despite these representations, petitioner now claims the contrary. Nevertheless, for the following reasons, petitioner's claims are without merit.

### Counsel's Inducement to Plead Guilty

Valdez argues that her counsel, Rodney S. Baum, rendered ineffective assistance by inducing her to plead guilty, promising her that in exchange for her guilty plea, Valdez would receive the benefit of the "safety valve" provision, and would receive a 63 month sentence, concurrent with her undischarged term of imprisonment imposed by the Southern District of Texas, so thatValdez would be released from custody on the time she had already served.  In support, petitioner points to the Sentencing Memorandum submitted by retained counsel, Todd S. Clemons. [rec. doc. 903-2, pgs. 13-14].

To be constitutionally valid, a guilty plea must be knowing and voluntary.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing  Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989).   Thus, a guilty plea may be invalid if induced by defense

counsel's unkept promises.  *Id.*   On the other hand, a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath.  *Id. citing  United States v. Fuller,* 769 F.2d 1095, 1099 (5th  Cir. 1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id. quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).

Moreover, any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th  Cir. 1994).   A "mere understanding" on the part of the defendant that she would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed.  *DeVille v. Whitley,* 21 F.3d 654, 658 (5th  Cir. 1994) *citin*g *Harmason,* 888 F.2d at 1529.  Nevertheless, a defendant may seek *habeas* relief on the basis of alleged promises, though inconsistent with representations she made in open court when entering her guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.  *Cervantes*, 132 F.3d at 1110 *citing Harmason,* 888 F.2d at 1529.

If the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue.  *Id.*  If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet this burden of proof in

the light of other evidence in the record, an evidentiary hearing is unnecessary.  *Id*. *citing United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988) (*per curium*) and *United States v. Raetzsch,* 781 F.2d 1149, 1152 (5th Cir. 1986).

In the case at bar, Valdez has submitted no affidavits from reliable third parties, the precise identity of any eyewitness to the alleged promise, or any indicia of the likely merit of her allegations.  Additionally, petitioner's allegations are inconsistent with the bulk of her conduct and in light of other evidence in the record.  Specifically, the record is devoid of any evidence as to the existence of any promise by Valdez' counsel, Mr. Baum, as to the exact sentence that petitioner would receive.  Rather, the record expressly contradicts such a claim.

In her Plea Agreement, Valdez acknowledged her understanding of the maximum penalty which could be imposed for conspiracy to possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base or "crack" and one thousand kilograms or more of marijuana, namely, a mandatory minimum term of imprisonment of ten years up to a maximum of life imprisonment.  Petitioner also acknowledged that her plea was free and voluntary and that no threats had been made against her.  Further she acknowledged that her sentence would be determined by the Court, that she understood that the Sentencing Guidelines were not mandatory, that the Court could depart from the Guidelines under some circumstances, and that no promises or representations had been made as to the sentence the Court would impose. [rec. doc. 467-4].

Likewise, in her Affidavit of Understanding of Maximum Penalty and Constitutional Rights Valdez again acknowledged, in writing, that she had been informed of the maximum penalty which could be imposed for the charged conspiracy, and she again acknowledged, in writing, that her guilty plea was free and voluntary and made without any threats or inducements whatsoever. [rec. doc. 467-1, pg. 1-2]. Further, during her plea hearing, the Court confirmed that petitioner understood and signed each of these documents. [rec. doc. 641, pg. 24-25].

Valdez' sworn testimony during the plea hearing also directly refutes her present allegations. Petitioner was expressly advised by the Court of the maximum penalty for the crime to which she was to plead guilty, expressly advising petitioner that she faced "an imprisonment term of confinement up to a maximum of life in prison"; petitioner acknowledged her understanding of the maximum possible penalty. [*Id*. at pg. 20-21].

Valdez admitted that she understood the terms of the Plea Agreement, which specifically emphasized that petitioner's sentence would be determined by the Court and that the Sentencing Guidelines were not mandatory, and further emphasized that no promises or representations had been made as to the sentence the Court would impose and that petitioner could not withdraw her plea in the event the Court departed from the Guidelines. [*Id.* at pg. 22-24]. After recitation of the terms of the Plea Agreement, Judge Doherty expressly asked "Ms. Valdez, is that how you understand it to be?"; Valdez responded, while under oath, "Yes." [*Id.* at 24].

Petitioner also admitted, while under oath, that she had not been promised any particular sentence and that she understood that her sentence would be determined by the Court after a PSI was prepared.  [*Id*. at pg. 26-28].  More specifically, petitioner verified that no one had made any promise, other than those contained in the Plea Agreement, that induced her to plead guilty, and expressly confirmed that her attorney made no promises to her.  In response to the Court's specific inquiry as to whether counsel had made any promises to her, Valdez replied, "No, no, no, he just explained."  [*Id*. at pg. 25].

This testimony, and the lack of any evidence contained in the record substantiating petitioner's allegations, clearly refute Valdez' claim that her attorney, Mr. Baum, induced Valdez to plead guilty by promising her that the Court would sentence her to 63 months imprisonment and, accordingly, that she would be released from custody after serving her sentence for the Southern District of Texas conviction.  The record is clear and unambiguous.  Petitioner was repeatedly advised of the maximum term of imprisonment which could be imposed, and petitioner repeatedly indicated her understanding. Moreover, Valdez' colloquy with the Court expressly contradicts the existence of any promise or inducement by counsel.  Judge Doherty clearly explained to Valdez that her sentence would be determined solely by the Court after the completion of a PSI, and that Valdez could not rely on counsel's predictions as to what he thought the Guidelines sentence might be, to later withdraw or vacate her plea.   Petitioner stated, not only that she understood, but also that she agreed to those terms.

26

Finally, Valdez' reliance on Mr. Clemons' Sentencing Memorandum is misplaced. Petitioner argues that this memorandum confirms the alleged promise made by Mr. Baum to petitioner. However, the Sentencing Memorandum does exactly the opposite. The Sentencing Memorandum was submitted by Mr. Clemons because there was no promise as to the sentence which Valdez would receive. Accordingly, counsel argued for a sentence which would be the most beneficial to his client, depending on whether the "safety valve" was found to apply or not. In the event of the former, that is, that the "safety valve" was found applicable, counsel argued, not for a sentence of 63 months as petitioner now suggests that Mr. Baum promised, but rather counsel argued that a 54 month sentence should be imposed. This argument was not based on any alleged promise by Mr. Baum (or anyone else for that matter). To the contrary, the argument was based Valdez' age, background and medical conditions, which counsel argued should justify a downward departure from the Guidelines range. [*Id*. at 26; rec. doc. 903-2, pg. 13-14].

For the reasons set forth above, petitioner's claim of ineffective assistance of counsel fails. There is no evidence whatsoever that counsel coerced Valdez into pleading guilty on the basis of any unfulfilled promise, and, more specifically, that counsel promised Valdez that she would received a 63 month sentence in this case. Accordingly, Mr. Baum cannot be deemed ineffective as a result of this non-existent promise.

To the extent that Valdez suggests that Mr. Baum was ineffective by advising Valdez to plead guilty, instead of proceeding to trial, that claim is likewise without merit.

27

In her Reply, Valdez compares the outcome of her plea to that of her son, Antonio Luna Valdez, Jr., who filed a Motion to Dismiss the indictment and ultimately went to trial, arguing that her son received a better result.  Valdez states "the effective assistance of counsel that my son Antonio Valdez, Jr. has been afforded, is the same ineffective assistance of counsel that I was deprived of" and "that there are two different outcomes, reveals that my counsel's performance was deficient and fell way below the standard of reasonableness." [rec. docs. 999 at pg. 23; 1024 at pg. 2].

Valdez' claim is without merit.  The reasons this Court denied her son's Motion to Dismiss the indictment would apply equally to Valdez.  Hence, had Valdez filed a Motion to Dismiss, the Motion would have been denied for exactly the same reasons this Court denied her son's Motion. [*See* rec. docs. 1004 and 1039].  Further, since the filing of her Reply, Antonio Luna Valdez, Jr. has gone to trial, was found guilty of the same conspiracy Valdez plead guilty to, and was sentenced to life imprisonment. [rec. docs. 1066, 1199 and 1203].

Clearly, in comparison, the result obtained by Valdez' counsel via petitioner's guilty plea, a 78 month term of imprisonment, based on total offense level reductions for petitioner's acceptance of responsibility (3 levels) and application of the "safety valve" provision (2 levels),  instead of the maximum possible sentence of life imprisonment, cannot be deemed unreasonable performance or in any way prejudicial to Valdez.  Her

claim is therefore without merit.[5]

**Failure to file Motions to Suppress**

Valdez argues that counsel should have filed Motions to Suppress evidence seized during a June 9, 2005 stop of three other co-conspirators, set forth in Count 6 of the superceding indictment, at which Valdez admits she was not present, and the "initial stops of April and May", set forth as overt acts (d) and (f) in the indictment. This claim is barred by the entry of petitioner's counseled, knowing, intelligent and voluntary plea, but is nevertheless without merit. *Glinsey; Bendicks*, *Broce, supra.*

Where defense counsel's failure to litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, in addition to the *Strickland* factors, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

It is clear that Valdez lacked standing to move to suppress the evidence seized during the June 9, 2005 stop. It is well settled that there is no "co-conspirator exception" to the rule that a defendant must have standing to contest the constitutionality of a search or seizure. *United States v. Padilla*, 508 U.S.77, 113 S.Ct. 1936 (1993); *United States v.*

---

[5]The Court also notes that while Valdez alleges that co-defendant Eric Joseph Alexander was promised ten years for his role in the conspiracy, the record belies that allegation. Following his guilty plea, Alexander was sentenced to 228 months imprisonment for his role in the drug conspiracy. [rec. doc. 1127].

*DeLeon*, 641 F.2d 330, 337 (5ᵗʰ Cir. 1981).  A defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure.  *Id. citing Alderman v. United States*, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965–966, 22 L.Ed.2d 176 (1969), *Rakas v. Illinois,* 439 U.S. 128, 131, n. 1, 133–134, 99 S.Ct. 421, 425–426, n. 1 (1978) and *Rawlings v. Kentucky*, 448 U.S. 98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980).   Thus, suppression of the product of a Fourth Amendment violation cannot be urged "by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and co-defendants have been accorded no special standing." *Padilla,* 508 U.S. at 81-82 *citing Alderman*, 394 U.S. at 171–172.

        In light of the above, any Motion to Suppress filed by Valdez challenging this stop would not have been meritorious.  In fact, no hearing on the Motion would have been granted because Valdez lacked standing to bring the Motion.  Counsel need not file a futile motion. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5ᵗʰ Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5ᵗʰ  Cir. 1990); *see also United States v. Preston*, 209 F.3d 783, 785 (5ᵗʰ Cir. 2000) *citing Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness. . . .").   Petitioner has not satisfied the first *Strickland* requirement.  Thus, this claim is without merit.

While Valdez may have had standing to file a Motion to Suppress with respect to the stops in April and May following visits to Eric Alexander's residence set forth as overt acts (d) and (f) of the superceding indictment, there is nothing which was seized during these stops, the introduction of which at trial would have hurt Valdez' case.

Police surveillance of the vehicle in which Valdez was a passenger is clearly not suppressible because mere surveillance is not a seizure.  Further, nothing was seized at the traffic stop of April 27, 2004.  Since nothing was seized, there was nothing to suppress. Counsel is not ineffective for failing to file a futile Motion.  *Cockrell, Koch* and *Preston, supra*.

The May 21, 2004 stop recovered only a roll of saran wrap.   There is no reasonable probability that petitioner's case would have been different, or resulted in a different outcome, had counsel moved to suppress the saran wrap.  This singular piece of evidence had little or no evidentiary value and might well never have been admitted over objection.  Accordingly, petitioner has not demonstrated any actual prejudice from counsel's alleged failure to file a motion to suppress this evidence.  *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

**Failure to file a Motion to Dismiss for a Speedy Trial Violation**

Petitioner's speedy trial claim is clearly foreclosed by the entry of her knowing, voluntary guilty plea, as is her claim that her counsel was ineffective for failing to file a Motion to Dismiss on speedy trial grounds.  *United States v. Broce*, 488 U.S. 563, 569,

31

109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992) (and cases cited therein); *United States v. Cruz*, 455 Fed. Appx. 508, 510 (5th Cir. 2011); *Glinsey; Bendicks*, *Broce, supra.* Moreover, for the reasons set forth below, there was no speedy trial violation in petitioner's case. Accordingly, counsel's failure to file a Motion to Dismiss on speedy trial grounds does not cause counsel's performance to fall below an objective level of reasonableness. *Johnson, Koch, Preston*, and *Green*, *supra*.

The Speedy Trial Act requires that "the trial of a defendant . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, several "periods of delay" are "excluded . . . in computing the time within which the trial of any such offense must commence[,]" including a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion. . . . " 18 U.S.C. § 3161(h), (h)(1)(D). *United States v. Washington,* 2009 WL 1664570, *2 (W.D. La. 2009) *citing United States v. Hartzog*, 189 Fed. Appx. 340, 347(5th Cir. 2006).

The statutory exclusion for "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted" tolls the seventy-day period until May 16, 2007,

32

the date of the arraignment of Maria Aide Delgado [rec. doc. 186], the last co-defendant to be arraigned under the original indictment. 18 U.S.C. § 3161(h)(6). Under this exclusion, "the speedy trial clock does not begin to run in a multi-defendant prosecution until the last co-defendant makes his initial appearance in court." *Id. quoting United States v. Harris*, 566 F.3d 422, 428 (5th Cir. 2009).[6]

This case was certified as complex as early as February 15, 2007, because there were multiple defendants, located in both Texas and Louisiana, and the voluminous amount of discovery involved, making it impossible for the parties to prepare for trial within the deadlines set forth in § 3161. [rec. doc. 126]. The Speedy Trial Act lists the types of factors the court must consider in granting a continuance, including: "[w]hether the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation . . . within the time limits established by this section." § 3161(h)(8)(B)(ii).

The district court has "discretion-within limits and subject to specific procedures – to accommodate limited delays for case-specific needs." *Id. quoting Zedner v. United States,* 547 U.S. 489, 499, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006). The Fifth Circuit has held that a district court's finding that a case is complex constitutes a sufficient ground to satisfy the statutory requirements for a continuance. *Id. citing United States v. Bieganowski*, 313 F.3d 264, 282 & n. 15 (5th Cir. 2002) and *United States. v. Edelkind*, 525 F.3d 388, 397 (5th  Cir. 2008).

---

[6]There were originally thirteen named defendants and no one was severed, including Valdez.

A superseding indictment was filed in this case on November 14, 2007. [rec. doc. 235]. In *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994), the Fifth Circuit articulated a fear that the government could circumvent the speedy trial guarantee through the simple expedient of obtaining superseding indictments with minor corrections. *Id.* at *3 *quoting United States v. Parker*, 505 F.3d 323, 327 (5th Cir. 2007) *quoting Bermea*, 30 F.3d at 1567. The Fifth Circuit has recognized that the "case presents a different profile" when the government seeks to "widen the scope of the criminal investigation so as to try [other] conspirators" and is not "merely correcting the indictment." *Id.* In that case, "[t]here is no abuse of the superseding indictment system;" the starting point for the speedy trial clock is thus reset to the date of the arraignment on the superseding indictment. *Id.*

The record reflects that the superceding indictment did not merely make corrections to the indictment. This superseding indictment made substantive changes to the indictment by adding charges of a money laundering conspiracy, and several substantive counts relating to that conspiracy. These changes widened the scope of the indictment and trial and reset the trial clock. The last defendants to be arraigned under this second superseding indictment were Wendy Dugas Hossley and Yvette Francis Eaglin on December 7, 2007. [rec. docs. 289 and 290]. The clock was therefore reset and began to run again on that date.

34

The case had been set for trial on June 9, 2008. [rec. doc. 267].  On May 12, 2008,
co-defendant Antonio Luna Valdez, Jr. filed a Motion to Continue [rec. doc. 335], which
although opposed by the government [rec. doc. 344], was granted by the Court on May
20, 2008, after conducting an "ends of justice analysis." [rec. doc. 369].  Notably, neither
counsel for Valdez nor any other co-defendant opposed the Motion.  The Speedy Trial
Act expressly excludes from the Speedy Trial Act time limit:

> [a]ny period of delay resulting from a continuance granted by any judge on
> his own motion or at the request of the defendant or his counsel or at the
> request of the attorney for the Government, if the judge granted such
> continuance on the basis of his findings that the ends of justice served by
> taking such action outweigh the best interest of the public and the defendant
> in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

Trial was reset to begin on January 5, 2009. [rec. doc. 373].  However, prior to the
trial date, Valdez entered her guilty plea on December 18, 2008  [rec. doc. 466],
approximately one year from the date the speedy trial clock began to run after the filing of
the superceding indictment.

Of course, the speedy trial clock was tolled during the pendency of any of the
defendants' motions.  18 U.S.C. §3161(h)(1)(D); *Id.* at *2 *citing Hartzog, supra.*  During
this period, several defense motions were filed, thus, tolling the speedy trial clock. [*See*
rec. docs. 99, denied by 376; 100, denied in part by 349, and granted in part by 349; 101,
granted by 337and 338, appeal denied by 354, and reversed on appeal by 424 and 425;
105, denied by 350; 102, denied by 377;  335, granted by 369; 329, granted by 369;  353,

denied by 431; 385, denied by 387; 389, granted by 391; 423, granted by 428; 427, granted by 437; 447, granted in part and denied in part by 473; and 448, terminated by 473].

Accordingly, the Speedy Trial Act was not violated in this case.

To the extent Valdez argues that her Sixth Amendment right to a Speedy Trial was violated, that claim is likewise without merit.  The court in *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002), noted that "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *Id.* at *4 *quoting Bieganowski,* 313 F.3d at 284. This case is no exception.

In analyzing a Sixth Amendment speedy trial claim, this Court balances, among other relevant circumstances, (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted his right; and (4) any prejudice resulting to the defendant because of the delay. *Id. citing Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101(1972).  If "the first three factors weigh heavily in the defendant's favor," prejudice may be presumed. *Id. quoting Parker*, 505 F.3d at 328 (quotation omitted). If they do not, the defendant "must demonstrate actual prejudice." *Id.*

The length of delay in this case, from the date of original indictment (November 16, 2006) until the entry of Valdez' guilty plea (December 18, 2008), was approximately two years. In assessing the reasons for the delay, however, the Court has noted that

"pretrial delay is often both inevitable and wholly justifiable." *Id. quoting Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

The Fifth Circuit has also recognized that the extent to which this observation rings true will necessarily vary with the complexity of the case. *Id. citing Bieganowski*, 313 F.3d at 284–85. Thus, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge" such as the one with which Valdez was charged. *Id. quoting Barker,* 92 S.Ct. at 2192–93.

The courts in this Circuit have held that delays of less than five (5) years are not sufficient, by duration alone, to presume prejudice. *Id. citing Parker,* 505 F.3d at 327 and *United States v. Serna–Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003). Therefore, the length of the delay does not favor petitioner.

Neither do the reasons for the delay favor petitioner. "In examining the reasons for the delay, [this Court] must heed the Supreme Court's warning that 'pretrial delay is often both inevitable and wholly justifiable.'" *Id. citing United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994) *quoting Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520(1992). This principle applies fully when, as here, the delay was largely a result of the complexity of the case, the voluminous amount of discovery, the number of co-defendants and the myriad pretrial motions. *See Id.*

Further, Valdez has presented no evidence that "the Government act[ed] in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant."

*Id. citing Parker*, 505 F.3d at 329 *quoting United States v. Hernandez*, 457 F.3d 416, 421 (2006).  To the contrary, the record demonstrates that the government acted diligently, considering the number of defendants and the amount of discovery involved.  In fact, the government opposed one of the continuances.  The second factor weighs heavily against Valdez.

Moreover, Valdez did not assert her right to a speedy trial, nor did she oppose continuances by her un-severed co-defendants.  The Fifth Circuit in *United States v. Frye*, 489 F.3d 201 (5th Cir. 2007), held that Motions to Dismiss based on violations of the Speedy Trial Act are not assertions of a defendant's right to speedy trial. *See Id.* The *Frye* court reasoned that the applicable right is the right to a speedy trial; an assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial.  At the very least, a defendant's assertion of his speedy trial rights should manifest "his desire to be tried promptly." *Id. quoting United States v. Litton Sys., Inc.*, 722 F.2d 264, 271 (5th Cir. 1984) and *citing  Frye,* 489 F.3d at 211–12. Under the court's reasoning in *Frye*, the third factor weighs against Valdez.

In the final step of the *Barker* analysis, this Court examines the degree of prejudice that attached to Valdez because of the delay.  Valdez fails to make a showing of any prejudice.  Accordingly, the remaining *Barker* factor also weighs heavily against petitioner.

The speedy trial right serves to protect three interests: "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Parker,* 505 F.3d at 330 *quoting Frye,* 489 F.3d. at 739-40 *quoting Barker*, 407 U.S. at 532.  Valdez has not demonstrated  that the delay in her case undermined any of these interests.  She cannot show that her pre-trial incarceration was oppressive, during the period of her pre-trial incarceration in this district Valdez was serving her sentence imposed by the Southern District of Texas on other charges.  While she complains that, as mother of several co-defendants, her incarceration caused her anxiety and concern because she could not be with her children, given her incarceration on her prior conviction, this hardship would not have been lessened had this case moved more rapidly.  Finally, Valdez has not alleged any facts to demonstrate that her defense was in any way impaired.  Indeed, there is no suggestion that as a result of the delay, witnesses available to exculpate her became unavailable or that their memories had faded.  Valdez points to no evidence that was lost to her because of the delay.

For these reasons, no Sixth Amendment violation occurred in this case.

In sum, had a timely Motion to Dismiss been filed by counsel, this Court would have rejected Valdez' claims under both the Speedy Trial Act and the Sixth Amendment. Counsel therefore cannot be deemed deficient for failing to file this frivolous, non-meritorious motion.  *Johnson, Koch, Preston*, and *Green, supra*.

**Inadequate Investigation**

Valdez argues that Mr. Baum inadequately investigated her case to discover exculpatory evidence withheld by the government.  In her original Motion, Valdez cites surveillance documentation, video tapes, statements and reports in connection with the April 27, 2004, May 20, 2004 and June 9, 2005 stops alleged as overt acts (d) and (f) and count 6 in the superceding indictment.  In her Reply, Valdez suggests that she is referring to the alleged perjured testimony given by Eric Joseph Alexander during the January 21, 2009 trial of Antonio Luna Valdez, Jr. and the alleged perjured testimony of Agent Catalan before the grand jury, cited by her son in his Motion to Dismiss the indictment.

This claim is barred by the entry of petitioner's counseled, knowing, intelligent and voluntary plea, but is nevertheless without merit.  *Glinsey; Bendicks*, *Broce, supra.*

The defendant must establish three elements to set forth a *Brady* violation:  (1)  the prosecution suppressed or withheld evidence; (2) the evidence was favorable; and (3) the evidence was material to either guilt or punishment.  *East v. Johnson*, 123 F.3d 235, 237 (5th Cir. 1997); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). The government is not obligated to disclose every piece of evidence in its possession; only evidence that is favorable to the accused and material to guilt or punishment. *Kutzner v. Cockrell,* 303 F.3d 333, 336 (5th Cir. 2002); *Rector,* 120 F.3d at 558.

In addition to exculpatory evidence, impeachment evidence is subject to disclosure under *Brady*.  *East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995) *citing United States v.*

*Bagley*, 105 S.Ct. 3375, 3380 (1985).  However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'" *Id.* at 1005.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler,* 647 F3d 535, 541 (5th Cir. 2011) *citing Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) *quoting United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Valdez has not shown what further investigation would have revealed, nor has she shown how it would have helped her.  Valdez merely speculates that there exists some unidentified exculpatory evidence which was not produced by the government with respect to the three stops which were set forth in overt acts (d) and (f) and Count 6 of the superceding indictment.  Clearly, Valdez has failed to carry her burden.

Further, the Court was involved in the coordination and exchange of discovery from the inception of this case.  There is no indication whatsoever that government did not fully comply with its obligation to produce all exculpatory evidence in its possession to counsel for Valdez with respect to the stops which form the basis of the indictments against her.[7]

---

[7]There were two items of evidence relating to the June 9, 2005 stop involving Victor Luna Valdez, Ana Montoya and Maria Aide Delgado, which were at issue in Antonio Luna Valdez, Jr.'s Motion to Dismiss, a June 9, 2005 video statement of co-defendant Ana Montoya and  the video of the June 9, 2005 traffic stop, taken by the Louisiana State Police.  As this Court has found with respect to her

For those same reasons set forth by the Court with respect to the claims of Antonio Luna Valdez, Jr. in his Motion to Dismiss the indictment, Valdez' arguments as to the alleged perjured testimony given by Eric Joseph Alexander during the January 21, 2009 trial of Antonio Luna Valdez, Jr., and the alleged perjured testimony of Agent Catalan before the grand jury are likewise meritless. [*See* rec. doc. 1004].

The testimony of Alexander regarding the date when B & M started business has *absolutely nothing* to do with Valdez. Accordingly, Valdez could sustain absolutely no prejudice from counsel's alleged failure to investigate the circumstances surrounding it. Further, the testimony of Alexander was not given until after Valdez had plead guilty. Accordingly, counsel could not have discovered this testimony with any additional investigation. Clairvoyance or, in this case, an ability to predict future occurrences is not a required attribute of effective representation. *See Sharp v. Johnson*, 107 F.3d 282, 290 at fn. 28 (5th Cir. 1997).

Moreover, on the allegations presented by Antonio Luna Valdez, Jr., this Court has found that Agent Catalan did not commit perjury before the grand jury [*see* rec. doc.

---

son, neither item may be properly categorized as *Brady* evidence as to Valdez. [*See* rec. doc. 1004]. Categorizing the Montoya statement as *Brady* evidence is "a stretch", and in any event, would not provide much, if any, evidentiary value at trial.  Thus, it is not material to Valdez.  Pursuant to Louisiana State Police  policy, the video of the stop was destroyed when the tape was five years old.  The Court cannot see any way that the video could possibly constitute *Brady* material as to Valdez - she was not a participant in the June 9, 2005 incident, nor is there any evidence to suggest that she was in any manner involved in that incident. Thus, it is neither favorable, nor material to Valdez.

1004][8], and Valdez has failed to demonstrate that she suffered any prejudice as a result of the challenged inaccuracies.  Petitioner's conclusory allegations that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element" and are insufficient to raise a constitutional issue.*" Sayre*, 238 F.3d at 635; *Green,* 160 F.3d at 1043.

**Failure to Adequately Advocate**

Valdez claims that Mr. Baum was ineffective by failing to be present at her initial appearance on the superseding indictment and by failing to be present during her post-plea debriefing.  This claim likewise is barred by the entry of petitioner's counseled, knowing, intelligent and voluntary plea, but is nevertheless without merit.  *Glinsey; Bendicks*, *Broce, supra.*   Further, Valdez has shown no actual prejudice with respect to either of these allegations.

At her initial appearance on the superceding indictment, the Court, with the use of an interpreter, advised petitioner of the charges against her (which were exactly the same as those contained in the original indictment), the maximum penalty for the charges and her Constitutional rights, after which a plea of not guilty was entered. [rec. doc. 282].

---

[8]Antonio Luna Valdez' challenges include the following: (1) prior to receipt of the laboratory report, Catalan incorrectly stated that Antonio Luna Valdez, Jr. possessed both marijuana and cocaine in Arkansas on February 11, 2003; (2) that on the April 27, 2004 and May 21, 2004 visits by Valdez, Victor Luna Valdez and Antonio Luna Valdez, Jr. to the residence of Alexander, Agent Catalan failed to mention that there was an additional passenger in the vehicle in which the trio were traveling; (3) that Agent Catalan  inaccurately stated that during November 24, 2006 stop, in addition to drugs, a large sum of money was found in the vehicle.  This inaccuracy resulted from an error in a prosecutive memorandum used as notes by Agent Catalan when testifying before the grand jury.

While counsel was not present for Valdez' initial appearance on the superseding indictment, the result of the proceeding would have been the same had counsel been present. Furthermore, Valdez made no incriminatory statements.

Likewise, counsel's absence had no effect whatsoever on petitioner's debriefing. To the contrary, Valdez' debriefing entitled Valdez to be eligible for the "safety valve." No greater benefit could have resulted had counsel been present. Counsel's absence therefore resulted in no prejudice whatsoever to Valdez. Relief is not warranted with respect to either of these claims for relief.

## II. Actual Innocence

Valdez argues that she is actually innocent of the conspiracy to which she entered a guilty plea because there was insufficient evidence to support her conviction. More specifically, Valdez claims that there is insufficient evidence that she was a knowing participant in the charged conspiracy.

To the extent that petitioner raises a sufficiency of the evidence claim, that claim is procedurally barred by the entry of petitioner's guilty plea because the claim is not directed at the validity of petitioner's guilty plea. *United States v. Hanyard,* 762 F.2d 1226, 1230 (5th Cir. 1985); *United States v. Gibson*, 204 Fed. Appx. 388, 389 (5th Cir. 2006); *United States v. Riojas*, 71 Fed. Appx. 408, 409 (5th Cir. 2003) ("Riojas' knowing and voluntary guilty plea waived any argument that the evidence was insufficient to connect her with the offense."); *United States v. Nichols*, 69 Fed. Appx. 658 (5th Cir.

44

2003).  *See also Glinsey; Bendicks*, *Broce, supra.*  Nevertheless, this claim is expressly refuted by petitioner's acknowledgments, in writing, and her sworn testimony during her plea proceeding.

In her Plea Agreement petitioner confirmed that she was pleading guilty to Count 1 of the superceding indictment because she was, in fact, guilty. [rec. doc. 467-4].  Further, in the stipulated factual basis for her plea (which Valdez acknowledged that she had carefully reviewed with her counsel, fully understood and voluntarily agreed to) Valdez admitted that "she conspired with her family members and others in south Texas to transport and deliver to Eric Joseph Alexander and his associates in the Acadiana Region of Louisiana, and to other locations in the United States, marijuana and cocaine."  She also admitted "that the quantities of cocaine delivered during the conspiracy was in excess if Five (5) kilograms." Valdez further admitted that "she and her family members transported drug proceeds from various locations in the United States back to the drug sources in south Texas." [rec. doc. 467-2].

Finally, during her plea hearing, while under oath and after being admonished by the Court to "listen very carefully and if any part of it is not correct, now is the time to tell me. . . " and after again being admonished by the Court prior to reading the last paragraph of the Stipulated Factual Basis containing the above admissions because "this is probably the most important set of facts, so listen up" [rec. doc. 641 at 15 and 19], Valdez confirmed twice that she agreed with the facts and further agreed that they were accurate

45

and correct. [*Id*. at 19 and 26].

To the extent that Valdez asserts a free standing claim of actual innocence, or asserts that any of her procedurally barred claims may now be considered, those claims are likewise without merit.

The Fifth Circuit has repeatedly held that a free standing claim of actual innocence does not in itself provide a basis for *habeas corpus* relief. Rather, it is a gateway through which a *habeas* petitioner must pass to have an otherwise barred constitutional claim considered on the merits. *Dowthitt v. Johnson*, 230 F.3d 733, 741–42 (5th Cir. 2000); *Foster v. Quarterman*, 466 F.3d 359, 367-368 (5th Cir. 2006*). See also Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

In *Schlup v. Delo*, the Supreme Court explained that a petitioner seeking to overcome procedural default by showing "actual innocence" must establish that it is more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Wright v. Quarterman*, 470 F.3d 581, 590 (5th Cir. 2006); *Foster*, 466 F.3d at 367.

Prisoners asserting actual innocence as a gateway to review must (1) present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show, that in light of this new evidence, "it is more likely than not that no reasonable

juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537, 126 S.Ct. 2064, 2077 (2006) *citing Schlup v. Delo*, 513 U.S. 298, 299, 324-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  Examples of new, reliable evidence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence. *See Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999) *citing Schlup v. Delo*, 513 U.S. at 324.

Here, Valdez offers no newly discovered evidence in the form of scientific evidence, physical evidence, or trustworthy eyewitness testimony.  Her claim of actual innocence therefore does not satisfy the gateway requirements for review by this Court and, accordingly, provides no basis for relief.

## III.  Ineffective Assistance of Appellate Counsel

Valdez additionally claims that she received ineffective assistance of appellate counsel because counsel failed to review the entire record prior to filing Valdez' direct appeal brief, focusing only on the plea and sentencing transcripts.  Valdez alleges that a thorough review of the entire record would have revealed that there was insufficient evidence to support her conviction.

By Reply, Valdez additionally asserts that a review of the entire record would have revealed that (1) the Marshals did not read her *Miranda* rights to her when they escorted her to Lafayette for her initial appearance, (2) the above alleged perjured testimony of Eric Alexander and Agent Catalan, and (3) the failure of counsel to file Motions to

Suppress. She also faults appellate counsel for failing to discover facts regarding her plea which are not contained in the record.

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Therefore, petitioner must demonstrate that her appellate counsel's performance in not reviewing the entire record (if that is true) to discover the existence of a sufficiency of the evidence claim was deficient and that she was prejudiced by the deficient performance because the outcome of her appeal would have been different. *Id.* at 410–11. "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted). Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.1994); *United States v. Garcia*, 348 Fed. Appx. 65, 66 (5th Cir. 2009) *citing United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

As set forth above, any claim based on sufficiency of the evidence, as well as all claims addressing non-jurisdictional defects in the prior proceedings (that is, the *Miranda* claim, the perjured testimony claims and the suppression claims) were foreclosed by the entry of petitioner's guilty plea. *Hanyard, Gibson*, *Riojas*, *Nichols*; *Glinsey; Bendicks*,

48

*supra.* Moreover, in light of the above analysis petitioner's perjured testimony and suppression claims are without merit.  Thus, any appellate claim based upon these arguments would have been meritless.  Finally, because direct appeals are determined on the record before the lower court, facts which are not contained in the record, or are outside the record, could not be considered by the appellate court. *See Miller v. Lowe's Home Centers, Inc.*, 184 Fed. Appx. 386, 389 at fn. 6 (5th Cir. 2006); *Maryland Casualty v. Reid*, 76 F.2d 30, 33 (5th Cir. 1935).

Accordingly, counsel's failure to discover facts surrounding Valdez' plea which are extraneous to the record caused Valdez no prejudice because any claim based on these facts would not have been considered by the Fifth Circuit on direct appeal.

For these reasons, petitioner cannot demonstrate that appellate counsel's performance was deficient.  Moreover, petitioner cannot demonstrate that she was prejudiced by her appellate counsel's performance because she cannot show that the outcome of her appeal would have been different if her appellate counsel had raised these issues.  Accordingly, petitioner is not entitled to relief on this claim.

For the foregoing reasons, the undersigned recommends that Sabina Luna Valdez' § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party

may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed February 3, 2013, at Lafayette, Louisiana.

*C. Michael Hill*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

50